# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| ENTERTAINMENT PRODUCTIONS, INC., | ) | |
| a Tennessee Corporation, | ) | |
| d/b/a Christie's Cabaret, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 08-2047 |
| | ) | |
| SHELBY COUNTY, TENNESSEE et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter came before the Court for a non-jury trial, which was held January 31-February 1, 2011. Plaintiffs Entertainment Productions, Inc., et al. (collectively, "Plaintiffs") present a First Amendment challenge to the Tennessee Adult-Oriented Establishment Registration Act of 1998, Tenn. Code Ann. §§ 7-51-1101, et seq. (the "Act"), and Shelby County Ordinance 344 (the "Ordinance"). In addition, Plaintiffs challenge the evidence in the legislative record as being insufficient to justify application of the Act to certain types of erotic entertainment falling within its scope. After reviewing the record in this case, and upon careful consideration of the testimony of the witnesses, the legal arguments of the parties, the legislative history of the Act, and circuit precedent, the Court finds that the Act withstands both challenges. Accordingly, judgment is rendered for Defendants as set forth herein.

**I.     BACKGROUND**

Plaintiffs operate a substantial fraction of the adult-oriented nightclubs in Memphis and Shelby County, Tennessee. In January 2008, Plaintiffs filed suit in this Court challenging the Act and the Ordinance.[1] (D.E. #1.) The Act is a county-option state law, taking effect in a particular county only after a two-thirds vote of the local legislative body. Tenn. Code Ann. § 7-51-1120. The Act aims to address many of the recognized negative secondary effects commonly associated with adult-oriented businesses. Such secondary effects include crime, the spread of sexually transmitted disease, reduced property values, and a host of other public health and safety issues. The Act sets up a licensing scheme, prohibits certain activities on the premises of adult-oriented businesses, and regulates the manner in which entertainment may be presented within such establishments. Shelby County adopted Ordinance 344 on September 13, 2007, making the Act applicable in Memphis and Shelby County. The law took effect locally on January 1, 2008.

In their complaint, Plaintiffs named Shelby County and the City of Memphis as Defendants; Tennessee's Attorney General, Robert E. Cooper, Jr., later intervened. Plaintiffs alleged numerous constitutional violations under the First and Fourteenth Amendments, including that the Act operates as a prior restraint, is unconstitutionally overbroad, and is void for vagueness. Plaintiffs also brought a state law claim alleging that the Act is not enforceable in the City of Memphis due to the existence of a local regulatory scheme applicable to adult businesses.[2] Plaintiffs sought a preliminary injunction precluding enforcement of the Act in Shelby County pending the resolution of their claims. (D.E. #4.) After a hearing on the matter,

---

[1] To the extent that separate discussions of the Act and the Ordinance are warranted, the Court will undertake distinct analyses of each. Otherwise, as a matter of convenience, general references to the "Act" encompass the Shelby County Ordinance as well.

[2] The Act, by its terms, does not apply in any municipal corporation which has and enforces a regulatory scheme which governs the operation of adult-oriented businesses. Tenn. Code Ann. § 7-51-1121. On the basis of this provision, Plaintiffs alleged that a number of local laws precluded the Act's enforcement in Memphis.

the Court denied the injunction, (D.E. #38), a decision which the Sixth Circuit affirmed. See Entm't Prod., Inc. v. Shelby Cnty., Tenn., 588 F.3d 372 (6th Cir. 2009). Thereafter, Defendants filed a motion for summary judgment on all claims. (D.E. #96.) In an order entered September 29, 2009, the Court granted in part and denied in part Defendants' motion. (D.E. #123.) The issue left open in that order and on which the parties proceeded to trial is the subject of this opinion.[3]

Specifically, the Court reserved decision on Plaintiffs' argument that the application of the Act to erotic performances by non-nude, "briefly attired"[4] entertainers renders it unconstitutional. Plaintiffs maintain that there is nothing in the legislative record linking this type of entertainment to the adverse secondary effects the Act purports to address, and that this fact warrants invalidation of the Act. During a two-day bench trial on these issues, the Court heard testimony from numerous witnesses, including experts for both sides who testified to incidents of crime and other secondary effects around adult businesses. Plaintiffs presented the testimony of Dr. Daniel Linz, a professor at the University of California who has studied extensively the primary and secondary effects associated with adult businesses. Dr. Linz testified that, in general, the results of his studies indicate at best a tenuous relationship between adult businesses and crime in the community.

---

[3] Notwithstanding the prior rulings of this Court, Plaintiffs continue to press "each and every one of the claims they asserted in their initial complaint and in their Preliminary Injunction Motion." See Joint Pretrial Order of the Parties at pp. 3-4. The Court finds no evidentiary basis on which to alter its prior rulings. The Court, therefore, incorporates by reference the analysis set forth in its Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (D.E. #123) with respect to claims not explicitly addressed herein.

[4] As the Sixth Circuit noted, Plaintiffs' references to "clothed" or "briefly attired" entertainers encompass entertainers who are distinctly not nude, but who are clad in more than "pasties" and "g-strings," for instance "bikinis, swimsuits, and other materials which, while opaque, do not completely cover the entire buttocks, or all portions of the breast below the topmost portion of the areola." Entm't Prod., Inc. v. Shelby Cnty., Tenn., 555 F.3d 372, 383 (6th Cir. 2009). Finding Plaintiffs' use of the adjective "clothed" to be somewhat fanciful, if not disingenuous, this Court will use "briefly attired" in reference to the type of adult entertainment to which Plaintiffs claim application of the Act is unsupported by the legislative record.

3

Defendants' expert Dr. Richard McCleary presented testimony to the contrary—that sexually-oriented businesses result in significant secondary effects related to crime, public health, quality of life, and property values. Both experts gave testimony regarding the methodologies they used to study secondary effects, as well as testimony critiquing the methodology employed by the other. In addition to the testimony of these experts, the Court heard from Mr. Charles Gerald Westlund, the owner of several of the adult nightclubs represented in this case, who testified regarding the type of entertainment presented at his establishments. Finally, the Court heard testimony from Officer Alan Howard, Sergeant Kevin Williams, and Detective Charles Teeters of the Memphis Police Department. All of these witnesses testified as to their personal knowledge and observations of illicit activities taking place in many of Memphis's adult-oriented businesses.

The Court has considered all of the evidence presented at trial and the legal arguments made by counsel for each side. Though both Plaintiff and Defendant offered evidence which supports their position, the Court does not find persuasive the testimony of Plaintiffs' single expert, particularly in light of the overwhelming evidence which demonstrates the existence of a link between adult businesses and secondary effects. Rather, as set forth more fully below, Plaintiffs' contention that the Act lacks support in the legislative record is belied by the evidence presented at trial, and judgment for Defendants is therefore appropriate.

## II. ANALYSIS

### A. Constitutionality[5]

---

[5] The Court notes that Plaintiffs' argument that the Act is unconstitutionally overbroad on its face did not survive the summary judgment phase of this proceeding. (See Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment at pp. 16-23.) In its order on Defendants' motion for summary judgment, this Court analyzed the language of the Act itself to determine whether the definitions of "adult cabaret," "adult entertainment," and "adult-oriented establishment" rendered the Act overbroad. (See Order at pp. 17-18.) The Court rejected Plaintiffs' argument that these definitions impermissibly extend the reach of the Act to mainstream venues that present theatrical and artistic performances which happen to feature nudity or sexual content. The basis

Numerous courts have upheld the authority of local governments to regulate sexually-oriented businesses. See, e.g., City of Littleton v. ZJ Gifts, 541 U.S. 774 (2004); City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425 (2002); City of Erie v. Pap's A.M., 529 U.S. 277 (2000); Barnes v. Glen Theatre, Inc., 501 U.S. 560 (1991); Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986); Young v. American Mini-Theatres, 427 U.S. 50 (1976); Richland Bookmart, Inc. v. Knox County, Tenn., 555 F.3d 512 (6th Cir. 2009); Déjà Vu of Nashville, Inc., v. Metro. Gov't of Nashville and Davidson Cnty., 466 F.3d 391 (6th Cir. 2006); DLS, Inc. v. City of Chattanooga, 107 F.3d 403 (6th Cir. 1997); Am. Showbar Series, Inc. v. Sullivan Cnty., 30 S.W.3d 324 (Tenn. Ct. App. 2004). While perhaps appearing at first blush to impinge on the freedom of expression guaranteed by the First Amendment, such regulations are routinely upheld as "content-neutral" time, place, and manner restrictions. See Renton, 475 U.S. at 46; Richland Bookmart, 555 F.3d at 523. This is because such regulations are not aimed at suppressing erotic expression, but rather at diminishing the deleterious secondary effects—such as increased crime, reduced property values, and transmission of communicable diseases—by which adult businesses are frequently attended. Id. (finding Knox County ordinance a "content-neutral time, place, and manner regulation" because its stated aim was to "prevent the deleterious secondary effects of sexually oriented businesses within the County"). Thus, regulations that incidentally burden expressive conduct are constitutionally permissible so long as they are designed to serve a substantial government interest and they do not unreasonably limit alternative avenues of

---

of the Court's rationale was the presence of limiting language in the Act which confines its application to venues where presentation of "adult entertainment" is the "principal use" of the business. The validity of this reasoning was reinforced by the Sixth Circuit when it affirmed this Court's denial of a preliminary injunction. See Entm't Prod., Inc. v. Shelby Cnty., Tenn., 555 F.3d 372 (6th Cir. 2009). In that decision, the Sixth Circuit undertook its own extensive analysis of the language of the Act and came to the same conclusion reached by this Court—that the Act is not facially overbroad. Thus, the Court confines its constitutional analysis to the discrete question left open in its previous order: whether application of the Act to establishments which feature "briefly attired" erotic performance violates the First Amendment.

communication. See Renton, 475 U.S. at 47; Entm't Prod., 588 F.3d at 378; Richland Bookmart, 555 F.3d at 520-22.

Applying this legal framework to the Act, this Court and others have determined that, to the extent the Act is designed to ameliorate the secondary effects of adult-oriented businesses generally, such regulation does not offend settled First Amendment jurisprudence. See Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment at 7-14 (citing Tennessee Court of Appeals' analysis in American Showbar and finding no genuine issue of material fact as to any of the O'Brien prongs with respect to the Act or Ordinance); see also Entm't Prod., 588 F.3d at 378 & n.2 ("[G]overnments may adopt measures . . . to ameliorate the adverse secondary effects of [adult-businesses] . . . so long as the[y satisfy] . . . O'Brien and Renton. . . . Plaintiffs do not argue that application of the Act does not satisfy . . . O'Brien and Renton[,] . . . [n]or would such a claim be likely to meet with success."); Am. Showbar Series, Inc. v. Sullivan Cty., 30 S.W.3d 324, 334 (Tenn. Ct. App. 2000) (upholding the Act as a content-neutral time, place, and manner regulation aimed at "combat[ing] the deleterious secondary effects associated with adult-oriented establishments"). The Court finds that the reasoning set forth in these opinions is sound. Nonetheless, Plaintiffs argue that there is no evidence in the legislative record linking secondary effects to briefly attired erotic entertainment specifically, and that application of the Act to these establishments is therefore unconstitutional. The Sixth Circuit's treatment of similar challenges is an appropriate starting point in this Court's analysis.

**B. Sufficiency of Legislative Record**

In DLS, Inc. v. City of Chattanooga, the Sixth Circuit considered a challenge to the Act's "six-foot rule," which prohibits dancers from coming within six feet of patrons, employees, or other entertainers during a performance. 107 F.3d 403, 408 (6th Cir. 1997). Not unlike the

6

challenge in the present case, the plaintiffs in DLS argued that the six-foot rule violated the First Amendment in that it did not further the governmental interests—namely, the prevention of crime and disease—cited as justification for the Act. In support of this argument, plaintiffs argued that "there [was] no evidence that 'adult cabarets' . . . are associated with crime or health problems." DLS, 107 F.3d at 410. The court disagreed, citing police records and reports as well as the trial testimony of undercover police officers as evidence to the contrary. Id. Despite much of this evidence being developed after enactment of the 1995 amendment, the Sixth Circuit found it adequate to support the ordinance and did not require the government to "show that the legislature *actually relied on evidence of secondary effects*." Id. (emphasis added). This notion, according to the court, was foreclosed by Justice Souter's concurring opinion in Barnes, which stated that the

> appropriate focus is not an empirical inquiry into the actual intent of the enacting legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional. . . . [L]egislation seeking to combat the secondary effects of adult entertainment *need not await localized proof of those effects*.

Barnes v. Glen Theatre, Inc., 501 U.S. 560, 582-84 (1991) (Souter, J., concurring in the judgment) (emphasis added). Applying this reasoning, the Sixth Circuit in DLS found it was "reasonable to conclude that the six-foot rule would further the state interests in the prevention of crime and disease." DLS, 107 F.3d at 411.

The Sixth Circuit also discussed "how much and what kind of evidence is required to justify a regulation such as the present Ordinance" in Richland Bookmart, Inc. v. Knox County, Tenn., 555 F.3d 512, 520 (6th Cir. 2009) (evaluating a challenge to the Act as adopted locally by Knox County). The plaintiffs in Richland attacked "the relevance and sufficiency of the evidence relied on by the County to justify the regulation of [*inter alia*] adult stores selling for

off-site consumption only." Id. at 520. Specifically, the plaintiffs argued that because the evidence cited in the Ordinance was not "germane" to their particular category of adult business, regulation of that business did not advance "the admittedly important interest[s]" of the state. Id. at 524. In response, the Sixth Circuit explained that the government need only show "a reasonable evidentiary basis for concluding that its regulation would have the desired effect." Id. at 523. This burden could be satisfied by showing "that the evidence upon which [the government] relied was 'reasonably believed to be relevant to the problem' [it] sought to address." Id. (citing Renton, 475 U.S. at 51-52; Alameda Books, 535 U.S. at 438 (plurality); id. at 449 (Kennedy, J., concurring in the judgment)). Importantly, the government was not required to produce evidence that its regulation *actually had the effect* of furthering its stated interest. Id. (citing Pap's A.M., 529 US at 298-99 ("The Court [in O'Brien] did not require evidence that the integrity of the Selective Service System would be jeopardized by the knowing destruction or mutilation of draft cards. . . . There was no study documenting instances of draft card mutilation or the actual effect of such mutilation on the Government's asserted efficiency interests."))

The Richland court recognized that "governments have a substantial interest in controlling adverse secondary effects of sexually oriented establishments, which include violent, sexual, and property crimes as well as blight and negative effects on property values." Id. at 524 (citing Pap's A.M., 529 US at 296; Richland Bookmart v. Nichols, 137 F.3d 435, 440 (6th Cir. 1998) ("Richland I")). In addressing the plaintiffs' argument that the Ordinance did not advance this interest, the court pointed to both circuit and Supreme Court precedent which have repeatedly held that "local governments need not conduct their own studies demonstrating that adverse secondary effects result from the operation of sexually oriented businesses or that the measures chosen will ameliorate these effects." Id. (citing Alameda Books, 535 U.S. at 438

(plurality opinion); id. at 451 (Kennedy, J., concurring); Pap's A.M., 529 U.S. at 296; Renton, 475 U.S. at 51-52; Déjà vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, 466 F.3d 391, 398 (6th Cir. 2006); Déjà vu of Cincinnati, L.L.C. v. Union Twp., 411 F.3d 777, 791 (6th Cir. 2005) (en banc)). Neither is a city required, before adopting such an ordinance, "to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is *reasonably believed to be relevant* to the problem that the city addresses." Id. (quoting Renton, 475 U.S. at 51-52). Finally, there is no requirement that a city "demonstrate empirically that its proposed regulations will or are likely to successfully ameliorate adverse secondary effects." Id. (citing Alameda Books, 535 U.S. at 439). In light of these standards, the Richland court upheld the ordinance despite the fact that "at least a subset of the businesses regulated by the Ordinance [had] not in fact generated any adverse secondary effects in Knox County." Id.

Plaintiffs' argument in the present case is virtually indistinguishable from that advanced by the plaintiffs in Richland: that the absence of any studies in the legislative record pertaining to a discrete subset of adult businesses renders that record insufficient to support the legislation as enacted. Like the Sixth Circuit in Richland, the Court rejects this argument. "Requiring local governments to produce evidence of secondary effects for all categories created by every articulable distinction is a misapprehension of the Supreme Court's holding that governments may rely on any evidence reasonably believed to be relevant." Richland Bookmart, 555 F.3d at 526 (citing Alameda Books, 535 U.S. at 438-39) (stating that the city need not demonstrate that "adult department stores" produce the same secondary effects as "adult minimalls"); GM Enters. v. Town of St. Joseph, 350 F.3d 631, 639 (7th Cir. 2003) ("The plurality [in Alameda Books] did not require that a regulating body rely on research that targeted the exact activity it wished to

9

regulate, so long as the research it relied upon reasonably linked the regulated activity to adverse secondary effects."). Likewise, Defendants in this case need not point to studies which included analyses of so-called "briefly attired" erotic entertainment. Rather, so long as the cumulative evidence of secondary effects documented in the legislative record "fairly supports" the State's and County's rationale in regulating such entertainment, Defendants have met their burden.

Under the analytical framework just described, the Court finds that both the Act and the Ordinance are sufficiently justified by reference to the legislative record. The preamble to the Act and its later amendments make clear that the Act is not intended to suppress any speech activities protected by the First Amendment. 1998 Tennessee Laws Pub. Ch. 1090. Rather, it aims to address the deleterious secondary effects of sexually-oriented businesses, including concerns over sexually transmitted disease, increased crime, and reduced property values. 1998 Tennessee Laws Pub. Ch. 1090. The preamble recites the General Assembly's finding that "sexually-oriented businesses are frequently used for unlawful sexual activities, including prostitution and sexual liaisons of a casual nature" and that "locational criteria alone do not adequately protect the health, safety, and general welfare of the people of [the] State." Id. The preamble recites the General Assembly's belief that uniform regulation of sexually-oriented businesses will further the State's interests in promoting the health, safety, and general welfare of its citizenry and preventing the deleterious location and concentration of sexually-oriented businesses within the State. Id. In later amendments, the General Assembly laid out in detail the "convincing documented evidence" linking adult businesses with secondary effects. See 2007 Tennessee Public Acts Ch. 541. In particular, it cited nearly forty cases from the United States Supreme Court, the United States Court of Appeals for the Sixth Circuit, and other courts, as

well as nineteen reports documenting the adverse secondary effects surrounding adult businesses in various locales across the country. 2007 Tennessee Public Acts Ch. 541.

As to the Ordinance, the Board of County Commissioners likewise considered a host of evidence linking sexually-oriented businesses to adverse secondary effects. See Shelby County Ordinance 344 pmbl. The Board explicitly adopted the General Assembly's findings regarding secondary effects in general, and identified these secondary effects as harms that the County has a substantial interest in abating. Id. It cited this interest as its rationale for regulating adult-oriented businesses and found that the cases and documentation referenced in the preamble—including a host of studies conducted locally in Memphis and Shelby County—supplied a sufficient link between adult businesses and secondary effects to justify the Board's adoption of the Act. Id.

Cumulatively, this evidence is more than adequate to supply a reasonable link between sexually-oriented businesses—including adult cabarets which feature performers clad in more than "pasties" and "g-strings"—and adverse secondary effects. Although Plaintiffs introduced evidence which they claim disproves any such link, at best Plaintiffs' proffered evidence "suggests merely that the [legislature] could have reached a different conclusion during its legislative process with regard to the need to regulate some categories of sexually-oriented businesses." Richland Bookmart, 555 F.3d at 527. As the Sixth Circuit and others have explained, "[E]vidence suggesting that a different conclusion is also reasonable does not prove that the [legislature's] findings were impermissible or its rationale unsustainable." Id.; see also GM Enterprises, Inc. v. Town of St. Joseph, 350 F.3d 631, 639-40 (7th Cir. 2003) ("Although [the] evidence shows that the [town government] might have reached a different and equally reasonable conclusion regarding the relationship between adverse secondary effects and sexually

oriented businesses, it is not sufficient to vitiate the result reached in the . . . legislative process."). Even if it were true—as Plaintiffs have argued but not established—that the Act reaches certain businesses which do not *in fact* produce harmful secondary effects, this fact alone would not make the legislative record insufficient to support the Act's validity. See Members of the City Council v. Taxpayers for Vincent, 466 U.S. 789, 800 (1984) (holding that "the mere fact that one can conceive some impermissible applications of a statute" is not sufficient to render it unconstitutional).

In light of the numerous cases and studies describing secondary effects relied on by the State and the County, it was reasonable for these entities to conclude that establishments presenting adult entertainment by performers clad in more than "pasties" and "g-strings" pose the same types of problems associated with other sexually-oriented businesses. Thus, the Court finds that application of the Act to these types of establishments is adequately supported by the legislative record.

## III. CONCLUSION

After careful consideration of the evidence presented at trial, the Court finds that the Act is constitutional and that its application to "briefly attired" or "scantily clad" erotic entertainment is adequately justified by the legislative record. Plaintiffs' contrary evidence notwithstanding, Defendants established the requisite "reasonable link" between the evidence cited by the General Assembly and the regulation of "briefly attired" or "scantily clad" entertainers. Accordingly, the Court finds in favor of Defendants.

**IT IS SO ORDERED** this 6th day of September, 2011.

             **s/ Bernice B. Donald**
             **BERNICE B. DONALD**
             **UNITED STATES DISTRICT COURT JUDGE**